CH

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05 CR 438** |
| | ) | |
| **ALPHONSE MITRIA,** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **PATRICIA MITRIA,** | ) | |
| | ) | |
| **Third-Party Citation Respondent.** | ) | |

**MEMORANDUM OPINION AND ORDER**

The government contends that Alphonse Mitria tried to avoid the restitution portion of his sentence by fraudulently transferring property to his wife, Patricia. The case is before the Court on the government's motion pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on its fraudulent transfer claims. For the reasons set forth below, the Court grants the motion in part and denies it in part.

**Background**

In 1972, Alphonse and Patricia bought a six-flat building at 8630 West Berwyn in Chicago. (Third Party Citation Resp't's LR 56.1(b)(3)(B) Stmt. ¶ 7.) From 1972 until December 2005, title to that property was held jointly in both their names. (*Id.*)

On May 19, 2005, FBI agents arrested Alphonse for, among other things, defrauding the U.S. government and possession of stolen property. (*Id.* ¶ 6.)

On July 12, 2005, Alphonse sold property he owned at 1818-20 West Race in Chicago and gave the net proceeds of the sale, $607,319.76, to Patricia. (*Id.* ¶¶ 14-15.) She used that money to buy property at 531 North Marshfield in Chicago and to open three $100,000.00 certificates of deposit at First Midwest Bank. (*Id.* ¶ 15.) Patricia owns the Marshfield property, which is unencumbered and has a value of more than $400,000.00, jointly with Joanie McNamara. (*Id.*)

On September 8, 2005, Alphonse was indicted by a grand jury for, among other things, conspiring to commit crimes against the United States, including transporting stolen goods in interstate commerce. (*Id.* ¶ 2; *see generally* Indictment.) Among other things, the indictment alleged that, as a result of his illegal activities, Alphonse had received $100,000.00 and one 10.57 carat emerald cut diamond, F in color, which were subject to forfeiture. (*Id.*)

On December 13, 2005, Alphonse sold another piece of property he owned, 2211 North Cicero in Chicago, and gave the net proceeds, $174,661.56, to Patricia. (*Id.* ¶ 13.) She used that money to buy property at 5645 West Eddy Street in Chicago. (*Id.*) Subsequently, Patricia sold the West Eddy property and used the net proceeds, $302,062.30, to pay off the mortgage on the West Berwyn property and the promissory note on her car. (*Id.*)

On December 30, 2005, Alphonse transferred his interest in the West Berwyn property to Patricia via a quit claim deed. (*Id.* ¶ 8.) Patricia gave Alphonse no value or consideration for the transfer of his interest to her. (*Id.* ¶ 9.)

On January 4, 2006, Alphonse pled guilty to conspiring to commit crimes against the United States pursuant to a written plea agreement. (*Id.* ¶ 3.) In that agreement, Alphonse acknowledged that his sentence would include an order to pay restitution in the amount of $330,000.00. (*Id.*)

On January 13, 2006, nine days after Alphonse's guilty plea, the quit claim deed he had given to Patricia for the West Berwyn property was recorded with the Cook County Recorder of Deeds. (*Id.* ¶ 8.)

On April 11, 2006, the Court sentenced Alphonse to thirty-seven months in prison, to pay restitution in the amount of $330,000.00 to Safeco Insurance Company, to pay a $50,000.00 fine to the United States, and to repay $20,900.00 in buy money to the FBI. (*Id.* ¶ 4.)

**Discussion**

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

"An order of restitution may be enforced by the United States . . . by all . . . available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(I)-(ii). One of those means is the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C. § 3001, which empowers the government to collect "an amount that is owing to the United States on account of a . . . fine, assessment, penalty, [or] restitution." *Id.* § 3002(3)(B).

The FDCPA forbids debtors like Alphonse to avoid their obligations to the government by fraudulently transferring their assets to others. *See id.* § 3304. A transfer is fraudulent if the debtor

makes it "with actual intent to hinder, delay, or defraud a creditor," or does so "without receiving a reasonably equivalent value" and with the intention or belief that "he would incur . . . debts beyond his ability to pay as they became due." *Id.* § 3304(b). Among the factors to be considered in determining whether a debtor had actual intent to hinder a creditor are whether: (1) the transfer was made to an insider, such as a spouse; (2) the debtor still controlled or possessed the property after it was transferred; (3) the transfer was disclosed or concealed; (4) the debtor had been sued or threatened with suit before the transfer was made; (5) the debtor transferred substantially all of his assets; (6) the debtor absconded or concealed assets; (7) the debtor received reasonably equivalent value, *i.e.*, property or satisfaction of an antecedent debt, for the transfer; (8) the debtor was insolvent, *i.e.*, his debts exceeded the fair value of his assets, or became so shortly after the transfer was made; (9) the transfer occurred shortly before or after a substantial debt was incurred; and (10) the debtor transferred the essential assets of his business to a lienor who transferred them to one of the debtor's insiders. *Id.* § 3304(b)(2); *see id.* § 3301(5) (defining "insiders" to include the debtor's relatives); *id.* § 3302(a) ("[A] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."); *id.* § 3303(a) ("Value is given for a transfer . . . if, in exchange for [it], property is transferred or an antecedent debt is secured or satisfied . . . ."). With these principles in mind, the Court turns to the transfers the government contests.

The first such transfer occurred on July 12, 2005, when he gave Patricia $607,319.76, the proceeds from the sale of his property at 1818-20 West Race. (*See* Third Party Citation Resp't's LR 56.1(b)(3)(B) Stmt. ¶¶ 14-15.) It is undisputed that Patricia used the money to buy property at 531 North Marshfield in Chicago in her own name and to open three $100,000.00 certificates of deposit at First Midwest Bank for herself or her grandchildren. (*Id.* ¶ 15.) Thus, the record establishes that

Alphonse gave the proceeds from the West Race property to an insider without receiving any value in return for them.

There is, however, no evidence to support the other intent-to-hinder factors. The record does not suggest that Alphonse attempted to conceal the transfer, that he transferred substantially all of his assets or that the transfer made him insolvent. On the contrary, the record establishes that the sale of the West Race property was recorded in August 2005, just weeks after it was made. (*See* Gov't Ex. C, Chizana Aff. ¶ 4(a)(iii).) Moreover, the record shows that when the transfer occurred in July 2005, Alphonse co-owned the West Berwyn property, which was valued at more than $800,000.00, and wholly owned the North Cicero property, the subsequent sale of which netted him almost $175,000.00. (*Id.* ¶ 4(a)(ii); Third Party Citation Resp't's LR 56.1(b)(3)(B) Stmt. ¶¶ 9, 13.) Further, the transfer occurred six months before Alphonse incurred the debt of restitution, and two months before he was even indicted. (Third Party Citation Resp't's LR 56.1(b)(3)(B) Stmt. ¶¶ 2-3, 15.) Given the timing of events and the transfer's failure to render Alphonse insolvent, there is a genuine issue of material fact as to whether he gave Patricia the proceeds from the West Race property with either the intent to hinder the government's collection efforts or the belief that doing so would make him unable to pay restitution in the future. The government's motion for summary judgment with respect to this transfer is, therefore, denied.

The situation is different, however, with respect to the other two transfers. The record establishes that Alphonse gave Patricia the $174,661.56 proceeds from the sale of the North Cicero property and his half-interest in the West Berwyn property three months after he was indicted and just days before he pled guilty pursuant to an agreement that required him to pay more than $300,000.00 in restitution. (*Id.* ¶¶ 2-3, 8, 13.) Alphonse made those transfers to his wife without receiving any value for them. (*Id.* ¶¶ 9, 13, 18.) Moreover, he continued to live in the West Berwyn house after he

gave it to Patricia, and she did not record the quit claim deed he gave her until after he pled guilty. (*Id.* ¶¶ 8, 10.) After the transfers, Alphonse's sole asset was his half-interest in a piece of vacant land in Wisconsin, an interest worth about $31,000.00. (*Id.* ¶ 21.) Because the record establishes that Alphonse's interests in the North Cicero and West Berwyn properties were his last substantial assets, he transferred them to his wife without receiving any value for them, he did so just days before incurring a substantial debt to the government, and the transfers rendered him insolvent, the Court finds that Alphonse made those transfers with either the intent to hinder the government from collecting restitution from him or the belief that doing so would make him unable to pay restitution in the future.

## Conclusion

For the reasons stated above, there is no genuine issue of material fact as to the government's claim that Alphonse fraudulently transferred the proceeds from the sale of the North Cicero property and his interest in the West Berwyn property to his wife Patricia. Therefore, the government's motion for summary judgment [doc. no. 61] is granted as to those transfers but denied with respect to the transfer of the West Race property proceeds.

**SO ORDERED.** **ENTERED:** 1/25/08

**HON. RONALD A. GUZMAN**
**United States District Judge**